**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Schoeneman,<br><br>                    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                    Defendant. | No. CV-14-08135-PCT-NVW<br><br>**ORDER** |

Plaintiff John Schoeneman seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which decided that his disability under sections 216(i) and 223(d) of the Social Security Act ended as of March 1, 2010. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

Plaintiff was born in September 1965 and completed the ninth grade. Plaintiff worked loading trucks and was injured on the job. On July 30, 1992, Plaintiff was found disabled as of January 1, 1992. On November 3, 1999, it was determined that Plaintiff's disability continued due to a lumbar spine disorder. Plaintiff is diabetic and morbidly obese, and he continues to have lumbar spine degenerative disc disease. Plaintiff claims he is unable to work because of extreme back pain.

Plaintiff obtained a commercial driver's license and received truck driver training from 2005 through 2008. In 2006 and 2007, Plaintiff earned more than $50,000 annually. In 2008, Plaintiff earned $12,266. It does not appear that he continued to work after 2008. A hearing was held regarding overpayment, Plaintiff was found at fault in causing the overpayment, and the issue was resolved. Plaintiff testified that he was receiving Social Security disability benefits at the time of the ALJ hearing on February 19, 2013.

On April 14, 2010, it was determined that Plaintiff was no longer disabled as of March 1, 2010. A hearing by video teleconferencing scheduled for January 11, 2013, in Phoenix, Arizona, was rescheduled for February 20, 2013, in Phoenix because Plaintiff wanted to appear in person. On February 19, 2013, Plaintiff requested a video hearing because he did not have transportation to the hearing office in Phoenix. On February 20, 2013, Plaintiff appeared in Prescott, Arizona, and testified by video teleconferencing at the hearing before the ALJ who was located in Phoenix. A vocational expert also testified. Plaintiff was informed of his right to representation, but chose to appear and testify without the assistance of an attorney or other representative.

Because Plaintiff had indicated that he would attend the hearing in Phoenix in person, the digital copy of the administrative record prepared for him was not mailed to him in advance of the hearing. Also, at the time of the hearing, the last records in the case were from October 2010, and Plaintiff had not responded to January 2013 requests for any updated medical records. Plaintiff stated that he had received additional medical evaluations and an MRI in the past month and provided the ALJ with information and consent to obtain those records. Post-hearing medical evidence was obtained and a copy provided to Plaintiff with opportunity to file a responsive statement.

On June 14, 2013, the ALJ issued a decision that Plaintiff's disability ended as of March 1, 2010. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On July 25, 2014, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. ADMINISTRATIVE FINDINGS

If an individual is entitled to disability benefits, his continued entitlement to such benefits must be reviewed periodically. 20 C.F.R. § 404.1594(a). Disability benefits may be discontinued if there has been medical improvement related to the claimant's ability to work and the claimant is currently able to engage in substantial gainful activity. Disability benefits also may be discontinued if there has been no medical improvement but other circumstances exist, such as the claimant is currently engaging in substantial gainful activity, does not cooperate in providing evidence or submitting to a medical examination, or fails to follow prescribed treatment expected to restore the claimant's

ability to engage in substantial gainful activity. To determine whether a claimant continues to be disabled, the Commissioner uses an eight-step process. 20 C.F.R. § 404.1594(f).

The ALJ found the most recent favorable medical decision finding that Plaintiff continued to be disabled is the decision dated November 3, 1999. The ALJ found that on November 3, 1999, Plaintiff had the following medically determinable impairment: back disorder. As of November 3, 1999, the impairment was found to result in the inability to perform work activity at any exertion level on a regular and sustained basis. The ALJ found that through March 1, 2010, Plaintiff had engaged in substantial gainful activity. Because Plaintiff apparently did not continue to work after 2008, the ALJ continued the sequential evaluation to determine whether Plaintiff's disability had ended.

The ALJ found that Plaintiff continued to have the same lumbar spine impairment that he had on November 3, 1999. The ALJ also found that Plaintiff's morbid obesity is severe and factored that into determining his ability to function. The ALJ determined that since March 1, 2010, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that as of March 1, 2010, the medical severity of Plaintiff's back impairment had decreased, medical improvement had occurred, Plaintiff's impairments (back disorder and obesity) were severe, Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a), and Plaintiff was unable to perform past relevant work. The ALJ concluded that as of March 1, 2010, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was able to perform a significant number of jobs in the national economy.

IV.  ANALYSIS

    A.  **Plaintiff Was Not Prejudiced by Not Viewing the Administrative Record Before the Hearing.**

Plaintiff contends his due process rights were violated because he did not have opportunity to view the administrative record before the ALJ hearing. Plaintiff postponed a hearing in which he would have participated by video teleconferencing from Prescott, Arizona, because he wanted to attend the hearing in person in Phoenix, Arizona. The day before the rescheduled hearing he notified the ALJ that he would not be attending the hearing in Phoenix, which was too late to deliver the digital copy of the record to Plaintiff in Prescott before the hearing. During the hearing, the ALJ named the source of each exhibit included in the record and asked Plaintiff whether he had any objection. Post-hearing medical evidence was obtained and proffered to Plaintiff. The ALJ gave Plaintiff opportunity to review all of the evidence of record and make a responsive statement before the ALJ issued her decision.

Contrary to Plaintiff's assertion, the ALJ stated on the record that "the disc for your hearing is here in this office" and did not say that "she was unable to prepare a CD of the administrative record prior to the hearing." It can be inferred that the disc was mailed to Plaintiff shortly after the February 20, 2013 hearing. On October 25, 2013, a representative for Plaintiff was appointed, and he requested a copy of the tapes of the hearings and all exhibits. The representative requested review by the Appeals Council and submitted additional documents on Plaintiff's behalf. He remained Plaintiff's representative until April 17, 2014, and did not object to any of the evidence in the administrative record. Plaintiff does not assert, and the record does not show, any prejudice caused by not viewing the administrative record before the ALJ hearing.

    B.  **The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could

- 5 -

reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Plaintiff testified that he has back pain, cannot feel his legs, uses a wheelchair whenever he is out of bed, and needs supplemental oxygen 14 to 16 hours a day. He testified that he cannot take narcotic pain medication because it makes him sick, but he takes non-narcotic pain medication daily and has been given approximately 30 short courses (about four days each) of steroid medication when the pain becomes almost unbearable. Plaintiff also testified that his diabetes is uncontrolled and he takes insulin injections.[1] He said he is able to walk without a wheelchair about a block or half a block before his leg goes numb or he gets sharp pains down his leg. He also said that he needs his wife to help him with showering, dressing, combing his hair, and putting on shoes. Plaintiff testified that it is dangerous for him to drive because he cannot feel his left leg,

---

[1] Plaintiff also said several times that his diabetes causes his fibromyalgia, and perhaps he meant diabetic neuropathy. However, the record does not include any evidence of either fibromyalgia or diabetic neuropathy. Further, the record does not include any evidence that diabetes caused Plaintiff any functional limitation, and treatment notes indicate Plaintiff refused diabetic or nutritional counseling related to diabetes management.

but he does drive occasionally if he feels good. When asked whether he would be able to do a job where he sat in his wheelchair, Plaintiff responded he would not because of back pain.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment for the following reasons: (1) Plaintiff's work at substantial gainful activity levels in 2006 and 2007 is inconsistent with continuing disability; (2) Plaintiff failed to report his work and earnings; (3) Plaintiff testified he was paid more than $50,000/year for learning to drive a truck; (4) Plaintiff's driving over a five-state area is inconsistent with inability to sit for prolonged periods; (5) Plaintiff testified he failed to appear for consultative examinations and the disability hearing officer's hearing in April 2011 because he was recovering from thyroid cancer surgery performed in October 2010; (6) Plaintiff claimed to be on prescribed oxygen 14 to 16 hours a day, but admitted he does not have a portable oxygen tank; (7) there is no documentation of a prescription or need to be on supplemental oxygen (his reports of using oxygen at night with a CPAP for sleep apnea); (8) medical records do not show any prescription for steroids[2] or record of pain medications making Plaintiff sick; and (9) Plaintiff testified he can walk only a block or half a block, but reported walking a mile twice a day in April 2012 and walking about a mile a day in March 2012.

Thus, substantial evidence supports the ALJ's credibility determination and supports finding that the ALJ provided specific, clear, and convincing reasons for discrediting Plaintiff's subjective symptom testimony.

---

[2] The record shows Plaintiff had a steroid injection in his right elbow, not that he was prescribed on multiple occasions four-day courses of oral steroids to manage his back pain. On December 26, 2012, however, Plaintiff was prescribed prednisone, a corticosteroid, for his right elbow tendonitis.

### C. The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity or in Discrediting the Nurse Practitioner's Opinion.

Plaintiff contends the ALJ abused her discretion in finding Plaintiff capable of sedentary work with no medical evidence in support of this assertion and the ALJ erroneously dismissed a medical source statement by treating Nurse Practitioner Heidi Read.

A residual functional capacity finding involves a detailed assessment of how a claimant's medical impairments affect his ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of all symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

Under 20 C.F.R. § 404.1513(a), only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Other sources" are not entitled to the same deference as "acceptable medical sources." *Id.* The ALJ may discount testimony from "other sources" if the ALJ gives reasons germane to the witness for doing so. *Id.* Under 20 C.F.R. 404.1513(d), "other sources" include nurse practitioners and physicians' assistants as well as non-medical sources, such as family members. Only "acceptable medical sources" can provide medical opinions, and only "acceptable medical sources" can be considered treating sources. SSR 06-03p, 2006 WL 2329939. Information from "other sources" cannot establish the existence of a medically determinable impairment, but it

may be used to show the severity of the individual's impairment and how the impairment affects the individual's ability to function. *Id.*

In weighing the opinions of "acceptable medical sources," the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally, greater weight is given to the opinions of treating physicians than those of examining physicians, and greater weight is given to the opinions of examining physicians than those of non-examining physicians. *Id.*  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ found there were no treating physician statements in the record regarding Plaintiff's ability to function in a work setting as of March 1, 2010.  Because Plaintiff repeatedly failed to appear for scheduled consultative examinations, there were no opinions by state agency examining physicians regarding Plaintiff's ability to function in a work setting as of March 1, 2010.  The ALJ considered the statement of Family Nurse Practitioner Heidi Read as testimony from an "other source."

On February 18, 2013, Ms. Read wrote a letter stating that Plaintiff had been under her care since October 3, 2012, and she was treating him for ankylosing spondylitis (arthritis of the spine), obesity, congestive heart failure, and uncontrolled diabetes.  Ms. Read's treatment notes for October 3, 2012, show that Plaintiff denied having back pain, and the results of examination of his back were "unremarkable, no tenderness." Prescriptions were written to refill all of his medications, none of which were for pain. On November 8, 2012, Ms. Read treated Plaintiff for a sinus infection.  Again, Plaintiff

denied having back pain, and the results of examination of his back were "unremarkable, no tenderness." On December 26, 2012, Ms. Read treated Plaintiff for another sinus infection and right elbow pain. She prescribed Naproxen and prednisone for the elbow pain and noted she would order an X-ray and refer Plaintiff to pain management for steroid injections for his right elbow. Plaintiff denied having back pain, and the results of examination of his back were "unremarkable, no tenderness." On January 25, 2013, the results of physical examination were limited range of motion of the right elbow with no swelling or discoloration but "pain upon lifting anything over 2 lbs." Ms. Read also noted "L1-S1 point tenderness." She noted the X-ray was negative, but she would order an MRI because Plaintiff "can still not move his arm or lift anything" and "is having sharp stabbing pain" in his right elbow. For the first time, Ms. Read indicated a diagnosis of ankylosing spondylitis and noted:

> Pt has ankylosing spondylitis and was dx in 1999 by Dr. Cunningham, this certified him for disability. He is now being denied disability due to lack of documentation. Will do a spinal MRI to check pts current condition and consider a referral to a rheumatologist. Pt is refusing to take narcotics and will stay on anti-inflammatories only.

On February 18, 2013, Ms. Read's notes state that Plaintiff's wife "is here today to go over her husband's long term disability," she "needs to get a letter to his social security about his disabilities," and she "states that she had brought a disc of his MRI on his Thoracic and Lumbar." The notes indicate that Ms. Read saw only Plaintiff's wife and she did not see Plaintiff on February 18, 2013. Ms. Read's February 18, 2013 letter states:

> He is not being treated with heavy opiate pain medication due to him fearing "loss of control," but considering his diagnosis anti-inflammatory medications are best and he has been taking Naproxen effectively. Patient is suffering from intermittent severe weakness and paralysis-like symptoms in his legs from time to time which is made worse by his obese condition and Spondylitis. He is often short of breath when walking and can only walk short distances, but often times he is using an electric wheelchair if he goes shopping and is unable to drive consistently. Patient did participate in

>physical therapy in the past but found it not helpful to his condition. He is unable to tie his shoes, go up and down the stairs, and lift over 20 lbs. He is able to care for himself as far as activities of daily living with the exception of driving. MRIs were done recently that confirmed patient's spondylitis, bulging discs and severe stenosis at L5-S1. Surgery would be appropriate for this patient if he is ready to consider this as an alternative, we are currently discussing this as an option. Most recently patient was referred to a rheumatologist for continued treatment for his spondylitis, and a cardiologist for his heart failure.
>
>It is my professional opinion that this patient qualifies for disability given his numerous limitations and continued state of debilitation.

On February 28, 2013, Plaintiff saw Ms. Read for right elbow pain and to learn the results of the MRI of his elbow. Ms. Read advised Plaintiff to use an immobilizer sling and noted she would refer him to an orthopedic specialist. Ms. Read's treatment notes do not mention ankylosing spondylitis or back pain.

The ALJ did not "dismiss" Ms. Read's statement, but did give reasons germane to the statement and the witness for not adopting Ms. Read's disability conclusion and functional limitations. The reasons include: (1) whether Plaintiff qualifies for disability is an issue reserved to the Commissioner; (2) nurse practitioners are not acceptable medical sources for purposes of establishing the existence of a medically determinable impairment; (3) the length of the treatment relationship was only four months; and (4) although a nurse practitioner may opine regarding functional limitations, Ms. Read's functional assessment appears to be based primarily on Plaintiff's subjective complaints, was requested by Plaintiff's wife two days before the ALJ hearing, and was not supported by Ms. Read's treatment notes or the greater objective record. Moreover, Ms. Read's functional limitations do not exclude sedentary work as defined in 20 C.F.R. 404.1567(a).

Substantial evidence supports the ALJ's determination that Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). Although the record does not support any functional limitation caused by Plaintiff's back impairment, the ALJ expressly considered Plaintiff's severe

morbid obesity in combination with a lumbar spine disorder and did not err by limiting Plaintiff to sedentary work.

### D. Determination of Overpayment Is Not Before the Court.

Plaintiff contends that the determination of overpayment was improper because he is educationally limited and probably did not receive access to the administrative record prior to the overpayment hearing. No records regarding the overpayment determination have been submitted in this case. Regardless of how the overpayment issue was resolved, it was not raised on appeal and is not before the Court now. Moreover, during the hearing regarding Plaintiff's continued disability, he said he earned more than $50,000 annually in 2006 and 2007 and that he and his family were continuing to receive disability benefits as of February 20, 2013.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 7th day of May, 2015.

Neil V. Wake
United States District Judge